COX v. LUCKY PAT OIL & GAS ASS'N et al.
(No. 314–3648.)

(Commission of Appeals of Texas, Section B. May 17, 1922.)

1. **Joint-stock companies ⬤⇒23—Stockholders are bound by association's articles authorizing trustees to sell property.**

Buyers of stock are bound by the articles of the association authorizing trustees to conduct its business affairs and acquire property necessary for its purposes, including power to sell all of the association's property for repayment of stockholders when unable to raise money sufficient to improve its property.

2. **Joint-stock companies ⬤⇒23—Stockholders by refusal to accept rescission held to have ratified sale of entire property by trustees.**

A stockholder of a joint-stock association *held* to have ratified a deal made by the trustees selling its property to another company by refusing, through his attorney, to accept a rescission of such contract and the placing of each party thereto in statu quo.

3. **Joint-stock companies ⬤⇒23—Stockholders under option held not entitled to part of funds derived from sale of association's property and also the cash value of their stock.**

Where a joint-stock association failed to carry on its business, and, realizing that its stockholders were entitled to a refund, sold its property to a company for $4,000 and 1,080 shares of such company's stock, and to pay to those stockholders of the association who refused to accept an exchange of stock the face cash value of their stock, *held,* that plaintiff stockholder was not entitled to share in the $4,000 and be paid the cash value of his stock.

4. **Joint-stock companies ⬤⇒23—Stockholders bringing of suit based on trustees' contract selling property held a ratification.**

The bringing of a suit by a stockholder of a joint-stock association based on the validity

of a contract by its trustees selling all its property to another corporation is an unequivocal method of showing a ratification of the trustees' act.

5. **Joint-stock companies ☞23—Stockholder ratifying trustee's sale contract is in same position as if agreeing to it in the beginning.**

Plaintiff stockholder's ratification of a contract, by which trustees of a joint-stock association sold all its property to another company, places him in the same relation to the contract as if he had expressly agreed to its provisions in the beginning.

Error to Court of Civil Appeals of Second Supreme Judicial District.

Suit by G. W. Cox against the Lucky Pat Oil & Gas Association and others. Judgment for plaintiff against the named defendant and others providing that the named defendant and trustees thereof have judgment over and against the Texas Consolidated Oil Company and others. Judgment was rendered in favor of defendant J. H. Foster, one of the trustees of the named defendants. The trustees, except Foster, appealed to the Court of Civil Appeals, where the judgment was reformed and affirmed (230 S. W. 858), and the plaintiff brings error. Judgments of the district court and Court of Civil Appeals reversed, and judgment rendered in part in accordance with the recommendation of the Commission of Appeals.

R. E. Carswell, of Decatur, for plaintiff in error.

McMurray & Gettys and Patterson & Lobdell, all of Decatur, and J. L. Rudy, of Bowie, for defendants in error.

HAMILTON, J. The statement of the case as made by plaintiff in error in his petition for writ of error is adopted:

"Defendants in error, and 31 other persons not personally connected with the litigation, owned an oil and gas lease on 5.56 acres of land in the Burkburnett oil field, and, without means to develop the same, undertook to organize and operate a joint-stock association for that purpose to be known as the Lucky Pat Oil & Gas Association. In pursuance of which they prepared and filed articles of association, designating 7 of defendants in error as trustees with authority to manage the affairs of the association; and the oil and gas lease was conveyed to the trustees in full payment of all the stock to be issued, which was to be 800 shares of $100 each; provided for the sale of the stock and the issuance of certificates therefor. After filing said articles, defendants in error, as trustees and officers of such association, issued a printed prospectus signed by them, which was to be used as stock subscription contract and to be signed by the subscribers; whereby they proposed to sell enough stock belonging to said promoters to drill and equip a well on the lease and turn it over to the stockholders free from further expenses; and that holders of stock would be entitled to a pro rata share of the lease so developed. A printed receipt to be signed by each purchaser of stock was prepared, and which, among other things, recited that the money was paid for a pro rata interest in a completed well, and operations were to be begun when sufficient stock was sold for that purpose. Plaintiff in error and those whose claims he holds bought 23 shares of this stock, signing the prospectus as a subscription contract and receiving a receipt for the same on the printed form above mentioned, and paid to defendants in error $100 per share for same, and received a certificate of stock in the association.

"After selling 105 shares of stock and receiving therefor $10,500, defendants in error were unable to sell any more, as developments showed the lease was worthless; and they determined to abandon the enterprise and dissolve the association; and, in pursuance with said determination, they entered into a contract with the Texas Consolidated Oil Association, whereby they conveyed to it the lease and the money on hand derived from the sale of stock, in consideration of the obligation to issue to all stockholders in the Lucky Pat Association stock in the Consolidated in lieu of and instead of their stock in the Lucky Pat Company; but provided that said Consolidated Company would pay to any stockholder in the Lucky Pat Company who refused to accept an exchange of stock, the par value of his said stock in cash; it also provided for the repayment to defendants in error the sum of $4,000 and the issuance to them of 1,080 shares of the stock of the Consolidated for themselves and associates.

"Upon the consummation of this deal, all the stockholders of the Lucky Pat Company except 50½ shares, including those held by defendant and his assignors, surrendered their stock in the Lucky Pat Company and accepted in lieu thereof stock in the Consolidated Company.

"Plaintiff in error and those whose interests he holds, upon learning of such deal, promptly refused to surrender their stock in exchange for the Consolidated stock and demanded a refund of the money paid by them for their stock; this being refused, the other holders of the 23 shares of stock represented in this litigation assigned their respective causes of action to plaintiff in error, who at once instituted suit in the district court of Wise county, Tex., against the individuals, defendants in error, and the Lucky Pat Company, to rescind the sale of the stock made to them by defendants in error and to recover of them the money paid for the same, and against the Consolidated Company and Bowden, Powers, and Morgan, officers of same, upon the obligation to refund to plaintiff and his assignors the face value of their stock, as upon a promise made by them to discharge the obligation of defendants in error.

"The cause was tried without a jury, and the trial court filed its conclusions of fact substantially as above set out, and rendered judgment in favor of plaintiff in error rescinding the stock sale and for the face value of the stock held by him, with interest, amounting to $2,380. Defendants in error alone appealed. The Court of Civil Appeals reformed the judgment

of the trial court, denying plaintiff's right to recover the money paid by him and his assignors for their stock, as upon a rescission of their purchase of same; but held that the $4,000 returned to defendants in error by the Consolidated Company was assets of the Lucky Pat Company, and distributed the same among all the original stockholders of the company on the basis of 800 shares, giving plaintiff only $115. Justice Buck of that court dissented from said latter conclusion, holding that said $4,000 should be distributed among those stockholders of the Lucky Pat only who had not surrendered their stock therein and accepted in lieu thereof stock in the Consolidated Company, and that plaintiff was thereby entitled to judgment for $1,821.70."

The prospectus referred to above reads:

"Lucky Pat Oil & Gas Association.
"Capital Stock $80,000.00.
"Offices at Bridgeport, Texas.
"State of Texas, County of Wichita.

"Whereas, the Lucky Pat Oil & Gas Association of Bridgeport, Texas, organized with a capital stock of $80,000.00 on the 2d day of November, 1918.

"This company is the owner of an oil and gas lease upon the following described tract of land in Wichita county, the same being five and fifty-six one hundredths (5.56) acre tract of land out of the William P. B. Dubose survey, at Burkburnett, Wichita county, Texas. This land being situated immediately west of the town of Burkburnett, as shown by subdivision of plat records of Wichita county, Texas.

"Whereas, the Lucky Pat Oil & Gas Association of Bridgeport, Texas, has organized with a capital stock of $80,000.00, divided into eight hundred (800) shares, the par value of each being $100.00, and in order to facilitate the promotion of said company, the drilling and completion of said well to the depth of 2,000 feet, or to the Fowler sand, we hereby offer a portion or such an amount of stock for sale to the public as we may desire to sell. With the proceeds from the sale of stock the said company agrees to drill and equip the well and pay all the expenses without further cost to the stockholders. The lease comprising the property of this company bears one-eighth royalty to the lessor, and 25 per cent. of the first well's earnings shall be used to dig well No. 2 on this company's holdings.

"Now, therefore we, the subscribers hereto, agree to subscribe for and pay the amount set opposite our names for the stock in the Lucky Pat Oil & Gas Company of Bridgeport, Texas, and each subscriber hereto shall be entitled to an interest in said company in proportion that the amount he has subscribed bears to the total capital stock of $80,000.

"Make all checks payable to the Lucky Pat Oil & Gas Association of Bridgeport, Texas, and take receipt for same signed by stock salesman. We are responsible for the statements made in our subscription lists and printed literature only, and no agent is authorized to make any other representations.

"The right to return all over subscriptions is reserved.

"L. H. Kaker, President and General Manager, "Bridgeport, Texas."

The assignment of the Lucky Pat assets to the Texas Consolidated Oil Company reads:

"The State of Texas, County of Tarrant.
"Know all men by these presents:

"That whereas, the Texas Consolidated Oil Company, of Fort Worth, Texas, a joint-stock association operating under a declaration of trust, as shown of record in Book 561, page 313, deed records of Tarrant county, Texas, acting by and through its duly authorized trustees, Ezra J. Morgan, N. E. Bowden, and A. D. Powers, desires to purchase the entire assets of the Lucky Pat Oil Company, of Bridgeport, Wise County, Texas; the said trustees of the Texas Consolidated Oil Company having been authorized to purchase same by resolution duly and legally passed at a special meeting of the board of trustees of the said Texas Consolidated Oil Company held in the city of Fort Worth, Texas, on the 20th day of April, A. D. 1919, which said resolution is of record in the minute book of the said Texas Consolidated Company.

"And whereas, the Lucky Pat Oil Company, of Bridgeport, Texas, a joint-stock association operating under a declaration of trust, as is of record in Book 107, pages 446–450 of the deed records of Wichita county, Texas, acting by and through its duly authorized trustees, L. H. Kaker, L. C. McCrory, C. W. Cosby, W. M. Thompson, John Golaz, P. A. Boaz, and W. T. Jarnigan, desires to sell the entire assets of the said Lucky Pat Oil Company to the said Texas Consolidated Oil Company and the trustees of the Lucky Pat Oil Company having been granted sufficient authority to sell same by resolution duly and legally passed at a called meeting of the board of directors and board of trustees held at its office in the city of Bridgeport, Texas, which said resolution is of record in the minute book of the said Lucky Pat Oil Company:

"Now therefore, the said Texas Consolidated Oil Company, hereinafter called party of the first part, and the said Lucky Pat Oil Company, called party of the second part, have made and entered into the following contract and agreement, to wit:

"For and in consideration of the sum of ten dollars ($10.00) paid and the further consideration that the said Texas Consolidated Oil Company agrees to issue and deliver 1,100 shares of its capital stock to the shareholders of the said Lucky Pat Oil Company in exchange for the stock in about that amount held by them of the said Lucky Pat Oil Company, and in case any of such stockholders of the Lucky Pat Oil Company shall refuse to accept such stock of the Texas Consolidated Oil Company in exchange for that held by them as herein provided then to refund to such stockholders so refusing the amount in money that may have been paid by them for such stock, that is the face value thereof as stated in the certificates, the said second party agrees to assign and set over to the first party the following assets of the said second party, to wit:

"An oil and gas lease on 5.56 acres of land described as follows:

"Tract near Burkburnett in Wichita county, Texas; beginning 2,170 feet east and 1,037 feet north of the southwest corner of the W.

P. B. Duboise survey; thence north 412 feet; thence west 584.2 feet; thence south 412 feet; thence east 584.2 feet to the place of beginning, being 5.56 acres off of 20.56 acre tract out of the said survey leased by J. B. Hardin to L. P. Gamble by lease dated September 12, 1918, and assigned to L. C. McCrory by lease dated October 23, 1918, and assigned by L. C. McCrory to the Lucky Pat Oil Company.

"Also all cash now on hand to the amount of $6,741.38, and any other personal or real property the said Lucky Pat Oil Company may be possessed of.

"The second party covenants with the first party, their executors or assigns, that the said Lucky Pat Oil Company is free and clear from all debt and liability except as hereinafter specified and binds itself to forever defend the same against the lawful claim of all persons whomsoever, and that the said second party has good and sufficient right and authority to make this contract.

"The party of the first part further agrees to pay that certain obligation of the said Lucky Pat Oil & Gas Company to L. H. Kaker, S. D. Handley and their associates in the promotion of said company, in the following manner, and in the following means: Four thousand ($4,000.00) dollars cash and ten hundred eighty (1,080) shares of the capital stock of the said Texas Consolidated Oil Company, said money to be paid and said shares of stock issued and delivered at the time of the execution of this agreement, said moneys and stock to be distributed among said parties and their associates as they may desire or direct.

"The said party of the first part agrees to relieve the trustees and directors of the Lucky Pat Oil & Gas Company from any and all responsibility as between themselves and the stockholders of the said Lucky Pat Oil & Gas Company that might arise by reason of the making of this said contract and the taking over of said property and effects hereby assigned to the said Texas Consolidated Oil Company, or in the execution of the conditions and stipulations herein contained, and in the event any refund for stock purchases shall be made to the party of the first part binds itself to make such refund to the amount invested by such stockholders in the Lucky Pat Oil & Gas Company.

"The party of the first part further agrees that actual operation shall begin for the drilling of a well upon the lease herein transferred within thirty days from the execution of this agreement.

"In witness whereof the parties hereto have caused this contract to be signed by the trustees of the respective parties hereto this the 29th day of May, A. D. 1919. Texas Consolidated Oil Company, Ezra J. Morgan, President, A. D. Powers, Secretary, Trustees. Lucky Pat Oil & Gas Company, L. H. Kaker, President, H. B. Mason, Secretary."

The uncontradicted evidence shows that plaintiff after he had full knowledge of the provisions of this contract, refused to permit defendants to rescind it and place all parties thereto in the same position occupied by them before the contract was made.

It is unnecessary for us to determine whether or not the Lucky Pat Oil & Gas Company was a partnership. In any event, the trustees of the company were agents for the other shareholders.

[1, 2] We agree with the Court of Civil Appeals in that portion of its opinion reading as follows:

"We do not think the plaintiff was entitled to a return of the face value of his stock. The certificate of stock contained this provision: 'This certificate of interest is subject to the provisions and covenants contained in the articles of association of the Lucky Pat Oil & Gas Association, dated the 2d day of November, 1918, and any amendments thereto and the by-laws of said association, present or future, and the provisions hereof.'

"Therefore the purchasers of stock bought subject to and were bound by the provisions of said articles of the association, and especially were such purchasers bound by the provision in said article specially authorizing the trustees to conduct the business and affairs of the company, to purchase, contract for, lease, or otherwise acquire any property necessary or proper for the purposes of the company, and to buy and sell any of the company's goods, wares, merchandise, material, supplies, machinery, appliances, and things necessary to its operation in due course of business. We are further of the opinion that, in addition to the fact that the trustees of the Lucky Pat Oil Company had authority to sell all of the property of the company under the circumstances shown, by virtue of the terms of the trust association under which they operated, their acts in making the deal they did make with the Texas Consolidated Oil Company were ratified by plaintiff when he refused, through his attorney, to accept a rescission of said contract and the placing of each party thereto in the position occupied before said contract was made." 230 S. W. 858.

[3] But we cannot agree that plaintiff was entitled to share in the $4,000 in any way. The contract assigning the assets of the Lucky Pat Oil & Gas Association, of every nature and kind, to the Texas Consolidated Oil Company, contained clear and explicit provisions as to the disposition of this money in language as follows:

"The party of the first part further agrees to pay that certain obligation of the said Lucky Pat Oil & Gas Company to L. H. Kaker, S. D. Handley and their associates in the promotion of said company, in the following manner and in the following means: Four thousand ($4,000.00) dollars cash and ten hundred eighty (1,080) shares of the capital stock of the said Texas Consolidated Oil Company, said money to be paid and said shares of stock issued and delivered at the time of the execution of this agreement, said moneys and stock to be distributed among said parties and their associates as they may desire or direct."

Plaintiff in error and those who assigned their interests to him were not all who had interests in the assets of the association. Each subscriber for stock was entitled "to

an interest in said company in proportion that the amount he has subscribed bears to the total capital stock of $80,000." The aggregate interest of all the holders of the 23 shares, owned by and assigned to plaintiff in error, before the sale of the company's assets was made, was $2,300 or $2300/80000 of the total assets. There had been sold 105 shares, including the 23 shares of plaintiff in error. The total fractional interest of all purchasers of stock was $10500/80000$. Therefore, the promoters still owned 695 shares. Their fractional part of the assets of the company was consequently $69500/80000$. After plaintiff in error had thoroughly investigated the deal and had become completely familiar with the contract in all of its details, he and those he represented refused to permit a rescission of the contract, thereby preventing the placing of each party thereto in the position occupied before the contract was made. Having thus prevented a rescission, plaintiff is bound by the provision of the contract whereby the Texas Consolidated Oil Company agreed "to pay to L. H. Kaker, and S. D. Handley and their associates in the promotion of said company," defendants in error, $4,000 and 1,080 shares of the capital stock of that company; "said moneys and stock to be distributed among said parties as they may desire or direct."

Plaintiff cannot claim under the provisions of the contract favorable to him and destroy the provisions favorable to defendants in error. Nor can he take what the contract provided for him and, in addition thereto, take a part of what was provided by the same contract for defendants in error. If he was not satisfied with that portion of the contract, he should have permitted a rescission.

"There is ordinarily no more certain and satisfactory a method of manifesting approval of an act than by voluntarily and knowingly taking the benefits which flow from its performance; and it is a general rule, of constant application in the law of agency, that he who, voluntarily and with knowledge of the facts, accepts the benefit of an act purporting to have been done on his account, by his agent, thereby ratifies it and makes it his own as though he had authorized it in the beginning." 1 Mechem on Agency, § 434.

[4] In addition to refusing assent to rescission and accepting provisions for benefits under the contract, plaintiff, as shown by the record in this case, has brought suit based on the validity of the contract.

"One of the most unequivocal methods of showing ratification of an agent's act is the bringing of an action at law based upon the validity of such act. The bringing of such an action manifests very clearly a determination to abide by the act, to regard it as valid, to enforce its performance. If the voluntary acceptance of the benefits of the act will or-dinarily work a ratification, as it has been seen to do, a fortiori will the endeavor by legal process to secure those benefits—to compel performance, accomplish that result." 1 Mech. on Agcy. § 446.

[5] Plaintiff's ratification of the contract places him in the same relation to it as if he had expressly agreed to its provisions in the beginning. The result is that he is estopped to complain, as against defendants in error, of any benefits they are to receive under it.

We recommend that the judgment of the district court and that of the Court of Civil Appeals, in so far as they allow plaintiff recovery of anything against the Lucky Pat Oil & Gas Association or any of the trustees named in the judgment of the district court, be reversed, and that judgment be rendered that, as to these, plaintiff take nothing, and that the judgments of those courts against the Texas Consolidated Oil Company be left undisturbed.

CURETON, C. J. It is ordered by the Supreme Court that the judgments of the district court and of the Court of Civil Appeals be reversed, and that judgment be rendered in part in accordance with the recommendation of the Commission of Appeals.